1

2

3

4

5

6

7               IN THE UNITED STATES DISTRICT COURT

8            FOR THE EASTERN DISTRICT OF CALIFORNIA

9    GREGORY P. GALVAN,

10              Plaintiff,                    CIV. S. 06-0743 GGH

11         vs.

12
     MICHAEL J. ASTRUE,[1]              ORDER
13   Commissioner of
     Social Security,
14
                Defendant.
15   _____/

16         Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's applications for Supplemental Security Income

18   ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security

19   Act ("Act").  For the reasons that follow, plaintiff's Motion for Summary Judgment is granted in

20   part, and the Commissioner's Motion for Summary Judgment is denied.  The Clerk is directed to

21   enter judgment for plaintiff.  This case is remanded for further findings pursuant to sentence four

22   of 42 U.S.C. §405(g).

23   \\\\\

24   _____

25        [1]  Michael J. Astrue became Commissioner on February 12, 2007.  Accordingly, he
     should be substituted as defendant in this suit.  Fed. R. Civ. P. 25(d)(1).  No further action need
     be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §
26   405(g).

1

BACKGROUND

Plaintiff, born May 25, 1960, applied for disability benefits on February 18, 2004. (Tr. at 47.)  Plaintiff alleged he was unable to work due to a broken right foot, right knee pain, low back pain, depression, anxiety, and headaches.  (Tr. at 91, 67.)  In a decision dated November 21, 2005, ALJ Antonio Acevedo-Torres determined that plaintiff was not disabled.[2] The ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

\\\\\

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
  Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
  Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
  Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
  Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
  Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

3.   The claimant's [sic] is a "severe" impairment, based upon the requirements in the Regulations.  (20 CFR §§ 404.1520 and 416.920).

4.   This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.   The claimant has the following residual functional capacity: stand, walk and sit six hours in an eight-hour day, and lift and carry 15 pounds frequently and 25 pounds occasionally.

7.   The claimant's past relevant work as security guard and hair stylist did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8.   The claimant's medically determinable right foot arthralgia, status post surgical repair does not prevent the claimant from performing his past relevant work.

9.   The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. at 17-18.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether the ALJ Failed to Develop the Record or Consider All of Plaintiff's Impairments at Step Two of the Analysis; B.  Whether the ALJ Rejected Plaintiff's Testimony Without Providing Legally Sufficient Reasons; and C. Whether the ALJ Erred in Finding Plaintiff Could Perform His Past Work Despite His Credible Testimony and Evidence of Record.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

1  Substantial evidence is more than a mere scintilla, but less than a preponderance.  <u>Saelee v.</u>

2  <u>Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

3  accept as adequate to support a conclusion.'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 402, 91 S. Ct.

4  1420 (1971), quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229, 59 S. Ct. 206

5  (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

6  testimony, and resolving ambiguities."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir.

7  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

8  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

9  <u>Thomas v. Barnhart</u>, 278  F.3d 947, 954 (9th Cir. 2002).

10  <u>ANALYSIS</u>

11      A.  <u>Whether the ALJ Failed to Develop the Record or Consider All of Plaintiff's</u>

12  <u>Impairments at Step Two of the Analysis</u>

13      Plaintiff first claims that the ALJ erroneously excluded from consideration at step

14  two plaintiff's right foot peroneal tendinitis, chronic inversion sprain/strain right ankle, and

15  osteoarthritis in his right foot.

16      At the second step of the disability analysis, an impairment is not severe only if it

17  "would have no more than a minimal effect on an individual's ability to work, even if the

18  individual's age, education, or work experience were specifically considered."  SSR 85-28.  The

19  purpose of step two is to identify claimants whose medical impairment is so slight that it is

20  unlikely they would be disabled even if age, education, and experience were taken into account.

21  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S. Ct. 2287 (1987).  "The step-two inquiry is a de minimis

22  screening device to dispose of groundless claims."  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th

23  Cir. 1996).  At this step, the ALJ may decline to find a severe impairment "*only* if the evidence

24  establishes a slight abnormality that has no more than a minimal effect on an individual's ability

25  to work."  <u>Webb v. Barnhart</u>, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original).

26  Nor does the allegation of symptoms alone, whether credible or not, suffice to establish a severe

4

impairment:

> To qualify for benefits, Ukolov must be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added); see also 42 U.S.C. § 1382c(a)(3)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D) (emphasis added).

> In Social Security Ruling (SSR) 96-4p, the SSA explained what is needed under SSA regulations to show a medically determinable impairment. SSR 96- 4p, 1996 WL 374187 (July 2, 1996). [FN2 omitted] The ruling clarified that "[a]lthough the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone." Id. at *1 (footnote omitted); see also 20 C.F.R. §§ 404.1508, 416.908.  The ruling noted the distinction between symptoms and signs: "symptoms ... are an individual's own perception or description of the impact of his or her physical or mental impairment(s) .... [W]hen any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.'" SSR 96-4p, 1996 WL 374187, at *1 n. 2; see also 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b). The ruling then reemphasized the importance of objective medical evidence to a determination of disability:

>> [R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings .... In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process.

> SSR 96-4p, 1996 WL 374187, at *1-2.

5

1             Under these standards, Ukolov can only establish an impairment if
2             the record includes signs--the results of "medically acceptable
              clinical diagnostic techniques," such as tests--as well as symptoms,
3             i.e., Ukolov's representations regarding his impairment.

4  <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004-1005 (9th Cir. 2005).

5          The ALJ in this case found that plaintiff's right foot arthralgia, status post surgical

6  repair, to be the only severe impairment. (Tr. at 15.) He did not find plaintiff's right foot

7  peroneal tendinitis or chronic inversion sprain/strain right ankle, as diagnosed by Dr. Girelli, to

8  be severe impairments. (Tr. at 192-93.) Nor did he find plaintiff's claim of osteoarthritis in his

9  right foot to be severe. Osteoarthritis is not diagnosed anywhere in the medical record, and it is

10  also not referenced in plaintiff's summary of relevant medical evidence; however, osteoporosis is

11  mentioned.[3] (Pl.'s Mot. at 2-3.) Therefore, osteoarthritis was properly not found to be a severe

12  impairment.

13          The diagnosis of chronic inversion sprain/strain right ankle was made only one

14  time in the record. (Tr. at 192.) Right foot peroneal tendinitis was diagnosed only twice in the

15  record, on September 3 and 17, 2004. (<u>Id.</u> at 192-93.) Nevertheless, because step two analysis is

16  only a screening device, these minimal diagnoses are sufficient to qualify these impairments as

17  severe.

18          Dr. Girelli prescribed Celebrex, advised plaintiff to purchase hard sole/hard heel

19  footwear, and either over the counter or possibly custom orthotics, but there was no indication

20  that plaintiff followed this advice. (<u>Id.</u>) There is also no sign that these conditions were expected

21  to last as long as twelve months. Dr. Girelli did not give an opinion regarding the severity of

22  these conditions, or their long term effects. He saw plaintiff only from April 28, 2004 to

23  September 17, 2004. (<u>Id.</u> at 191-97.) Although the last appointment note recommends that

24  plaintiff return in two weeks for follow up, plaintiff did not return to this podiatrist for further

25
26      [3] Contrary to plaintiff's claim that osteoarthritis was documented by x-rays, these tests
indicated the unrelated condition of osteoporosis. (Tr. at 187, 189.)

1   treatment.  (Tr. at 192.)

2          The ALJ specifically noted these diagnoses, but found only the "right foot

3   arthralgia, status post surgical repair," to be a severe impairment, probably because it was the

4   resulting permanent impairment emanating from these earlier transitory diagnoses.  (Tr. at 13,

5   15.)   What is not so clear is the long term prognosis of these three impairments.  Peroneal

6   tendonitis in particular is known to heal slowly, often taking weeks or months before significant

7   progress is seen.  www.myfootshop.com.  Moreover, its effect, or lack thereof, on the arthralgia,

8   is unknown. Consequently, plaintiff's claim that the ALJ failed to develop the record by not

9   providing records to consulting physician Dr. Turkot, has merit.[4]

10          Dr. Turkot, an internist, had only plaintiff's x-ray of his right foot, dated February

11  19, 2004, available for a September 19, 2004 exam.  Dr. Turkot first noted that plaintiff came to

12  the appointment with a cane which had not been prescribed, and was wearing an insert in his

13  right shoe.  Although plaintiff was complaining of pain in his right knee, he did not provide any

14  x-rays or records regarding steroid injections or surgery on the right knee.  In regard to the right

15  foot, plaintiff did not have x-rays after the May, 2004 surgery was done, but only an x-ray of the

16  right foot from February, 2004.  (Tr. at 198.)  Dr. Turkot diagnosed right foot arthralgia, status

17  post surgical repair of fracture.  Range of motion was normal.  (Id. at 201.)  She thought that

18  reviewing notes from the surgery would have been helpful to determine the prognosis.  (Id.)

19  Although plaintiff was advised after the May, 2004 surgery to start walking on his right foot after

20  the surgery, he declined to do so, but got a cane instead and would not bear weight on this foot.

21  (Id. at 198, 201.)  Based solely on the exam and one x-ray, this physician concluded that plaintiff

22  could stand and walk for six hours in a work day, and sit with no restrictions.  Plaintiff could lift

23  and carry 15 pounds frequently and 25 pounds occasionally.  There were no other limitations.

24

25          [4]  Plaintiff also claims that the ALJ failed to consider the findings of plaintiff's treating
    physicians, including radiological evidence of osteoarthritis in the right foot, without giving any
    reasons.  As discussed above, there was no diagnosis or radiological evidence of osteoarthritis,
26  only osteoporosis.

1  (Id. at 202.)

2        The lack of records for Dr. Turkot's review prevented this physician from

3  determining if plaintiff's condition was temporary or permanent.  Without these records, the

4  evaluation is of little value.  This court will not speculate what a consulting physician would

5  opine if records were available to her.  Plaintiff's condition did appear to last a significant length

6  of time.  Therefore, aside from a permanent disability, it is possible that plaintiff may be eligible

7  for a closed period of disability.  It is also possible that plaintiff's condition was not expected to

8  last as long as twelve months.  Prognostication regarding plaintiff's condition must be based on a

9  competent, informed opinion, not on predictions from adversary lawyers.  Treating records do

10  not address functioning.[5]

11        Disability hearings are not adversarial.  Dixon v. Heckler, 811 F.2d 506, 510 (10th

12  Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his

13  decision") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J.,

14  concurring)).  The ALJ must fully and fairly develop the record, and when a claimant is not

15  represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts."

16  Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001).[6]  The duty also is heightened in the case of

17  a mentally ill claimant who may not be able to protect him or herself.  Id.

18        Evidence raising an issue requiring the ALJ to investigate further depends on the

19  case.  Generally, there must be some objective evidence suggesting a condition which could have

20  a material impact on the disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th

21  ───────────────

22    [5]  Although plaintiff has apparently abandoned any claim of depression, the psychiatric
records indicate he may be attempting to obtain a benefit, but likewise are telling in regard to his

23  physical impairment.  For example, his GAF score at his visit with Dr. Joyce was 80, and he
stated he was kicked out of the military based on "apathy."  (Tr. at 206, 204.)  Nevertheless, this

24  psychiatrist noted that when he accidentally bumped plaintiff's foot under the table at the exam,
plaintiff displayed significant pain.  (Id. at 205.)  There are too many unanswered questions in the

25  record for the court to find substantial evidence.

26    [6]  See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the
record even when claimant is represented).

1   Cir.1996); <u>Wainwright v. Secretary of Health and Human Services</u>, 939 F.2d 680, 682 (9th

2   Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate

3   inquiry.'"  <u>Tonapetyan</u>, 242 F.3d at 1150 (quoting <u>Smolen</u>, 80 F.3d at 1288.)

4           The ALJ can develop the record by (1) making a reasonable attempt to obtain

5   medical evidence from the claimant's treating sources, (2) ordering a consultative examination

6   when the medical evidence is incomplete or unclear and undermines ability to resolve the

7   disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4)

8   continuing the hearing; or (5) keeping the record open for supplementation.  <u>See Tonapetyan</u>, 242

9   F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B).  Ordering a

10  consultative examination ordinarily is discretionary, <u>see Wren v. Sullivan</u>, 925 F.2d 123, 128

11  (5th Cir.1991); <u>Jones v. Bowen</u>, 829 F.2d 524, 526 (5th Cir.1987), and is required only when

12  necessary to resolve the disability issue.  <u>See Reeves v. Heckler</u>, 734 F.2d 519, 522 (11th

13  Cir.1984); <u>Turner v. Califano</u>, 563 F.2d 669, 671 (5th Cir.1977).

14          Here, the only consulting opinion which would have adequately addressed

15  plaintiff's functional capacity could not do so as medical records were not provided to the

16  consultant.  Therefore, the case will be remanded to obtain a consultative exam wherein

17  plaintiff's medical file is provided to the consulting physician.

18  <u>CONCLUSION</u>

19          Accordingly, the court finds the ALJ's assessment is not fully supported by

20  substantial evidence in the record.  Plaintiff's Motion for Summary Judgment is granted in part,

21  the Commissioner's Cross Motion for Summary Judgment is denied, and the Clerk is directed to

22  enter Judgment for the plaintiff.   This case is remanded for further findings pursuant to sentence

23  four of 42 U.S.C. § 405(g).

24  DATED: 7/9/07                                    /s/ Gregory G. Hollows

25                                                   _____
                                                     GREGORY G. HOLLOWS
26  GGH/076 - Galvan0743.ss.wpd                      U.S. MAGISTRATE JUDGE